UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Steve B.,

       Plaintiff,

    v.                         Civil Action No. 2:18–cv–89–jmc

Commissioner of Social Security,

       Defendant.


## **OPINION AND ORDER**
(Docs. 13, 17)

Plaintiff Steve B. brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act, requesting review and remand of the decision of the Commissioner of

Social Security denying his application for Disability Insurance Benefits (DIB).

Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision

(Doc. 13), and the Commissioner's motion to affirm the same (Doc. 17). For the

reasons stated below, Plaintiff's motion is DENIED, the Commissioner's motion is

GRANTED, and the Commissioner's decision is AFFIRMED.


## **Background**

Plaintiff was 49 years old on his alleged disability onset date of November 26,

2014. He graduated from high school and also has a GED. (AR 38.) His work history

includes jobs as a sandblaster, a dishwasher/cheesemaker, a landscaper, a laborer, a

correctional officer, and a machine operator. (AR 58, 217, 234.) He is single and lives

by himself in an apartment in Barre. (AR 38.)

Plaintiff suffers from multiple physical and mental impairments, including degenerative disc disease of the cervical and lumbar spines, cervical radiculitis (inflammation) with referred pain and dysesthesia[1] to the shoulders and upper extremities, depressive disorder, generalized anxiety disorder, and difficulty focusing and concentrating. He had a good work history until the end of 2014, when he was injured on the job while lifting heavy stove parts over his head. (AR 39–40, 339, 842.) The injury exacerbated Plaintiff's already existing upper bilateral extremity and neck issues, resulting in debilitating back, neck, shoulder, and arm pain; and causing him to stop working on November 26, 2014. On December 2, 2014, Plaintiff underwent a cervical discectomy and fusion surgery[2] (AR 40, 425), which provided some relief but did not fully relieve his symptoms (AR 41). Since the surgery, he still has pain in his back, shoulders, and arms; and he suffers from persistent migraine headaches. (*Id.*; AR 60, 62.) He is unable to stay in one position for an extended period, and walking even just short distances bothers him. (AR 49.)

In an effort to relieve his symptoms, Plaintiff has tried physical therapy and steroid injections, but neither has provided much relief. He has, on the other hand, benefitted from medication and marijuana. (AR 45–46, 735.) An October 2016

---

[1] Dysesthesia is defined as experiencing abnormal sensations in the absence of stimulation. *Stedman's Medical Dictionary* 272280 (28th ed. 2006) (Westlaw).

[2] A discectomy is the surgical excision (cutting out) of all or part of an intervertebral disk (a disk of cartilage between two adjacent vertebrae). D, J.E. Schmidt, M.D., A*ttorneys' Dictionary of Medicine* (Matthew Bender 2018). To prevent the vertebrae from collapsing and rubbing together, fusion surgery—which involves the insertion of a spacer bone graft to fill the open disc space and to create a spinal fusion between the two vertebrae—is often performed along with a cervical discectomy. Mayfield Clinic, *Anterior Cervical Discectomy & Fusion*, https://mayfieldclinic.com/pe-acdf.htm (updated Nov. 2018).

medical report states that he was smoking marijuana eight times per day (four-to-five grams total) at the time. (AR 891; *see also* AR 46, 735.) Plaintiff testified at the administrative hearing that he no longer treated with any doctors for his back pain and related issues because they had been unable to relieve his symptoms. (AR 47.)

Despite his impairments, Plaintiff is able to clean his apartment and prepare his own simple meals. (AR 55, 228.) He is also able to travel independently by walking, driving (with some difficulty), and using public transportation. (AR 229.) Medical records document that, among other activities, he played volleyball, swam, and kayaked during the relevant period. (AR 549, 662.) Plaintiff is limited, however, in his ability to use eating or writing utensils, and to reach above his head or behind his back; and he requires the help of his sister with food shopping. (AR 229; AR 55–57.)

On June 16, 2015, Plaintiff protectively filed his application for disability insurance benefits. (AR 189.) Therein, he alleges that, starting on November 26, 2014, he has been unable to work due to neck, lower back, and shoulder impairments; and leg and ankle pain. (AR 208.) Plaintiff's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. The hearing was conducted on February 24, 2017 by Administrative Law Judge (ALJ) Matthew Levin. (AR 35–68.) Plaintiff appeared and testified, and was represented by an attorney. A vocational expert (VE) also testified at the hearing. (AR 64–67.) On April 18, 2017, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act at any time from his alleged onset date through the date of the decision.

(AR 20–29.)  Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–6.) Having exhausted his administrative remedies, Plaintiff filed the Complaint in this action on May 29, 2018.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the

claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Levin first determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 26, 2014. (AR 22.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, depression, anxiety, and cannabis abuse. (*Id.*) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 23–24.) Next, the ALJ determined that Plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(b), except as follows: "[Plaintiff] is unable to climb ladders, ropes[,] or scaffolds. He is limited to occasional crawling. [He] retains the mental capacity to perform simple, 1–3[-]step tasks, and is able to maintain attention and concentration for 2-hour increments in an 8-hour workday and 40-hour workweek." (AR 24.)

Given this RFC, based on testimony from the VE, the ALJ found that Plaintiff was able to perform his past relevant work as a sandblaster, as it is actually and generally performed. (AR 28.) The ALJ concluded that Plaintiff had not been under a disability from his alleged disability onset date of November 26, 2014 through the date of the decision. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v.*

*Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because: (1) the ALJ afforded too much weight to the September 2015 opinions of nonexamining agency consultant Dr. Carl Runge; (2) the ALJ failed to acknowledge objective evidence of Plaintiff's incomplete cervical fusion; and (3) the ALJ mischaracterized the opinions of Dr. Ryan Jewell, Dr. Ellen Gaughan, and Dr. Philip Davignon, who provided opinions for Plaintiff's workers' compensation (WC) case. (Doc. 13 at 4–12.) Moreover, Plaintiff claims substantial evidence does not support the ALJ's step-four finding that Plaintiff can do his past relevant work as a sandblaster. (*Id.* at 12–15.) The Commissioner counters that the ALJ's decision is supported by substantial evidence and free of legal error. The Court finds in favor of the Commissioner for the reasons discussed below.

# I.	ALJ's Analysis of the Opinions of Agency Consultant Dr. Runge and Consideration of Plaintiff's Incomplete Fusion

On September 17, 2015, after reviewing the relevant evidence, agency consultant Dr. Runge completed a Physical RFC Assessment of Plaintiff and opined that, despite his cervical, thoracic, lumbar, and shoulder pain, Plaintiff was capable of medium work, except he could not climb ladders, ropes, or scaffolds, and he could only occasionally crawl.  (AR 87.)  Acknowledging that this opinion was made by a "non-examining and non-treating expert source[]," the ALJ gave it "great evidentiary weight" because it was "consistent with the evidence of record, including evidence received at the hearing level."  (AR 28.)  Plaintiff argues that the ALJ erred in this analysis because Dr. Runge's opinion "did not mention the evidence of [Plaintiff's] incomplete [cervical] fusion."  (Doc. 13 at 6; *see* AR 630.)  Moreover, Plaintiff argues that evidence submitted after Dr. Runge made his opinion, which the ALJ ignored, confirmed that Plaintiff's December 2014 cervical spine surgery resulted in an incomplete fusion.

Although it is true that Plaintiff did not have a complete fusion of his bone graft at the time that Dr. Runge formulated his September 2015 opinion (*see* AR 630), Dr. Runge accurately noted that the medical records from that period nonetheless "consistently [showed no] significant neurological deficit" (AR 87; *see* AR 597, 600, 603).  Moreover, as the ALJ noted in his decision (AR 25–26), later medical records similarly indicate that, despite the incomplete fusion, Plaintiff's symptoms either remained the same or improved after the surgery.  For example, a November 2015 treatment note states that a neurological examination was "nonfocal" (normal) with

cranial nerves "grossly intact," and that a musculoskeletal examination showed "[g]ood strength[,] 5/5 in both upper and lower extremities." (AR 799.) And a December 2015 treatment note includes cervical spine CT results indicating that, although Plaintiff's bone graft material was "incompletely incorporated," there was "no lucency [(darkness)] around the fixation screws to suggest abnormal motion." (AR 711.) The note further states that Plaintiff was neurologically stable, appeared comfortable, moved around the room "with comfort and ease," and was able to "mov[e] all four extremities without difficulty." (*Id.*) In the same month, another treatment note states that, despite being "bothered" by neck pain, Plaintiff reported he could "live with the pain but would like some means of palliating it if possible," inquiring about medical marijuana. (AR 721.) The medical provider recommended against surgery because Plaintiff was "functioning reasonably well and his symptoms [we]re nonprogressive." (AR 722.) In January 2016, another treatment provider noted that, despite the incomplete fusion, Plaintiff obtained "very good" pain relief by using marijuana and he therefore did not require opioids. (AR 735.) Treatment notes from August through October 2016 similarly state that Plaintiff had normal coordination, range of motion, and motor strength. (*See, e.g.*, AR 782, 887–88, 893.) And finally, in a January 2017 treatment note, yet another treating provider recorded that Plaintiff had a normal gait, symmetric reflexes, and intact motor strength. (AR 897.)

As also noted by the ALJ in his decision (AR 26–27), physical therapy notes from after the December 2014 surgery record that, despite the incomplete fusion, Plaintiff's symptoms improved. For example, Plaintiff reported at a March 2015

physical therapy appointment that his neck and shoulders were "feeling well today" and that he had "no new complaints." (AR 464.) The note from that appointment further stated that, although Plaintiff had decreased cervical and shoulder range of motion, he was "making gradual gains" and his rehabilitation potential was "good." (*Id.*) An April 2015 physical therapy note indicates that Plaintiff felt "pretty good" and was "just a little sore." (AR 478.) Another note from the same month states that Plaintiff was "[t]olerating progression well" and "[s]eeing improvement in posture/patterns and positioning." (AR 497.) A June 2015 physical therapy note records that Plaintiff stated "his neck and shoulders [we]re feeling good" and he had "no new complaints." (AR 535.) Records of other physical therapy appointments from around that period and later document that Plaintiff was doing "[n]ot too bad" (AR 497), "fairly well" (AR 442, 470, 506, 524, 645), "pretty good" (AR 635, 637, 662), "well" (AR 448, 456, 483, 491, 514, 677), "really good" (AR 631), and "great" (AR 633). In August 2015, Plaintiff was noted to be "making steady gains," and his strength was "improving." (AR 633; *see also* AR 450, 452.) Other physical therapy notes similarly indicate that Plaintiff was making "steady progress" or "gradual gains" with his strength and mobility. (AR 444, 456, 462, 468, 474, 506, 512, 652, 668.)

Considering these and other similar medical records, substantial evidence supports the ALJ's decision to afford great weight to Dr. Runge's September 2015 opinion. Furthermore, the ALJ properly considered (AR 23, 25, 27) that Plaintiff was able to function independently and walk—even long distances—during the relevant period (AR 55, 228–30). Specifically, Plaintiff told a nurse in July 2015 that he was

unable to drive due to a prior DUI and therefore walked "many miles . . . to get to destinations," including walking 14 miles on that particular day.  (AR 602.)  In September 2015, Plaintiff told a treating psychologist that he had no physical limitations regarding his own personal care; and he was able to cook, shop, run errands, visit people, and walk for exercise.  (AR 673.)  In April 2016, Plaintiff told a treating doctor that he was doing "a lot of walking," estimating the total to be "a couple of miles per day," given that walking was "the only way [he] g[ot] around." (AR 874.)  And Plaintiff testified at the February 2017 administrative hearing that he walked up to two miles at a time when he did not have a car during the relevant period.  (AR 48–49.)

The record also reveals that Plaintiff engaged in fairly vigorous physical activities during the alleged disability period.  For example, a May 2015 treatment note indicates that he was "stacking wood to help a friend out."  (AR 516.)  And a June 2015 treatment note states that he "had a good weekend playing volleyball and swimming."  (AR 549.)  A July 2015 treatment note records that he "went kayaking over the weekend and he feels pretty good today."  (AR 662.)  Another July 2015 treatment note states that Plaintiff "help[ed] his friend load trash in a trailer." (AR 660.)  Plaintiff testified at the February 2017 hearing that, about a month earlier, he was shoveling snow.  (AR 43–44.)  Plaintiff's ability to engage in these activities during the relevant period supports the ALJ's decision to afford great weight to Dr. Runge's opinion that Plaintiff could do medium work.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (ALJ decision to disregard treating physician

opinion was supported by the fact that plaintiff "had engaged in a range of recreational activities . . . , including snowmobiling trips to Ontario and Quebec, horseback riding, four-wheeling, and multiple vacation cruises"); *Besignano v. Colvin*, No. 12-CV-6123 (DLI), 2014 WL 4065090, at *9, 11 (E.D.N.Y. Aug. 14, 2014) (ALJ properly gave substantial weight to agency consultant opinions, where they were supported by plaintiff's daily activities, including lifting two cases of bottled water, walking up and down stairs without any struggle or perceived pain, and driving); *Prince v. Astrue*, 490 F. App'x 399, 400–01 (2d Cir. 2013) (no ALJ error where evidence showed plaintiff's physical impairments did not limit his ability to do basic work activities, and in fact, plaintiff was able to engage in "robust daily activities").

The Second Circuit has consistently found that the opinions of agency consultants like Dr. Runge may override those of treating physicians, when the former are more consistent with the record evidence than the latter.[3] *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567–68 (2d Cir. 1993) ("[T]he regulations . . . permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.")); SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). And this is so,

---

[3] In accordance with Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 11 (Jan. 18, 2017), the longstanding "treating physician rule" will no longer be in effect for applications made to the Social Security Administration on or after March 27, 2017. But because Plaintiff's DIB application was filed before that date (in June 2015), the revised regulations do not apply here.

even in cases like this, where the consultants have not reviewed the entire record, so long as the consultant opinions are supported by the record and there is no evidence of a new diagnosis or a worsening of the claimant's condition after the consultant opinions were made. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) ("No case or regulation . . . imposes an unqualified rule that a medical opinion is superseded by additional material in the record."); *Charbonneau v. Astrue*, Civil Action No. 2:11–CV–9, 2012 WL 287561, at *7 (D. Vt. Jan. 31, 2012).

Here, there is no evidence of a new diagnosis or a worsening of Plaintiff's condition since Dr. Runge made his opinion in September 2015. Moreover, as discussed above, Dr. Runge's opinion is supported by normal neurological findings, Plaintiff's frequent and consistent admission to medical providers that he was doing relatively well and managing his pain, statements of treating medical providers that Plaintiff was improving, and Plaintiff's ability to engage in various physical activities including walking long distances, playing volleyball, and kayaking. Further, despite Plaintiff's argument to the contrary, the ALJ was not required to discuss Plaintiff's incomplete fusion after his December 2014 surgery because ALJs need not discuss every piece of medical evidence, especially where—as here—the evidence is medically insignificant. *See Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) ("[A]n ALJ is not required to discuss every piece of evidence submitted[, and] . . . [his] failure to cite specific evidence does not indicate that such evidence was not considered." (internal quotation marks and citation omitted)); *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of

an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (internal quotation marks omitted)). Here, as discussed above, the medical evidence reveals that, since the surgery, Plaintiff has had no significant neurological deficits; normal coordination, range of motion, and motor strength; and pain relief/management with non-narcotic medication. Even Plaintiff himself admitted that his symptoms improved after the surgery, and that he was not seeing any doctors for his back pain. (AR 41.) *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112–13 (2d Cir. 2010) (citing "plaintiff's own testimony" as substantial evidence to support ALJ's decision).

## II.    ALJ's Analysis of Opinions of Workers' Compensation Physicians

Next, Plaintiff argues that the ALJ mischaracterized the opinions of three physicians who made opinions for his WC case, claiming the ALJ erroneously found that these physicians opined Plaintiff could return to work within six months of his surgery. (Doc. 13 at 7–11.) The Court finds no error, as discussed below.

Under the applicable regulations, disability decisions by other governmental agencies, such as the Workers' Compensation Board, are "not binding" on the Social Security Administration (SSA); and SSA adjudicators "will not provide any analysis in [their] determination or decision about a decision made by any other governmental agency . . . about whether [claimants] are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. §§ 404.1504, 416.904; *see also* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (SSA considers evidence of disability findings by other agencies

"inherently neither valuable nor persuasive," and therefore "will not provide any analysis about how [it] considered such evidence in [its] determination or decision."). Findings of disability for WC purposes are of particularly limited utility for disability purposes under the Social Security Act, given that those findings are geared to the claimant's prior employment and allow findings of partial disability, whereas the Social Security Act uses its own definition of disability, under which there is no partial disability, *see* 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505. *DeJesus v. Chater*, 899 F. Supp. 1171, 1177 (S.D.N.Y. 1995) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985) ("A person with a partial disability for purposes of [WC] is 'not disabled' under the Social Security Act, and even a person entitled to collect substantial damages because he cannot find any employment may be deemed 'not disabled.'")). Nonetheless, ALJs "will consider all of the supporting evidence underlying the other governmental agency['s] . . . decision" that is part of the record in the claim, 20 C.F.R. §§ 404.1504, 416.904, as the ALJ in this case considered the opinions of WC physicians Dr. Jewell, Dr. Gaughan, and Dr. Davignon.

### A.  Nonexamining WC Consultant Dr. Jewell

In February 2015, Dr. Ryan Jewell, a neurosurgeon, performed a medical records review for Plaintiff's WC case, and opined that Plaintiff could be released to light duty work three months following his surgery and to full manual labor within four to six months of the surgery, "assuming he is neurologically intact and that the x-ray indicates maturity of his cervical fusion."  (AR 845.)  The ALJ considered this

opinion, stating that he "accorded weight" to it but noting that "the doctor had no treating relationship with [Plaintiff]." (AR 26.)

Plaintiff asserts that the ALJ erred in failing to provide "any specifics" as to the weight he gave to this opinion, and in failing to acknowledge that Dr. Jewell's opinion was predicated on Plaintiff being neurologically intact and having a mature fusion. (Doc. 13 at 8.) As discussed above, however, even though the evidence indicates that Plaintiff did not have a complete fusion, his symptoms were improved and he was able to function relatively well after surgery. Moreover, the ALJ accurately stated that Dr. Jewell was not a "treating physician," and thus the ALJ was not required to afford controlling weight to Dr. Jewell's opinion.[4] *See Monette v. Astrue*, 269 F. App'x 109, 112 (2d Cir. 2008) (ALJ not required to give controlling weight to doctor's opinion where doctor "was not a treating physician during the period in contention"). The ALJ certainly could have provided a more in depth analysis of Dr. Jewell's opinion, and he could have stated with more clarity how much weight he afforded to it. But failure to provide specific weight to a medical opinion does not constitute per se remandable error; and the Second Circuit has held that, where an ALJ fails to provide a specific weight to an opinion, remand may not be necessary if the ALJ's rational can be inferred from his decision. *See Camille*, 652 F. App'x at 28; *Brault*, 683 F.3d at 448; *see also Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the

---

[4] Under the "treating physician rule," the opinion of a claimant's treating physician as to the nature and severity of an impairment "is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)).

evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

Clearly, the ALJ gave some weight to Dr. Jewell's opinion, given that both the ALJ and Dr. Jewell found Plaintiff capable of working during the relevant period, but the ALJ partially discounted the opinion because Dr. Jewell did not have a treating relationship with Plaintiff. In sum, the ALJ committed no error.

### B.     Examining WC Consultant Dr. Gaughan

In April 2015, neurologist and neuropsychiatrist Dr. Ellen Gaughan conducted an Independent Neurological Medical Examination of Plaintiff for Plaintiff's WC case. (AR 847–59.) Like Dr. Jewell, Dr. Gaughan concluded that Plaintiff could gradually return to work, reaching full duty in four months, "[a]ssuming that his fusion is intact and [his] treating surgeon agrees." (AR 855.) The ALJ accorded "great weight" to this opinion, "in light of the doctor's expertise and impartiality." (AR 26.)

Plaintiff again argues that the ALJ erred in failing to acknowledge that Dr. Gaughan's opinion was predicated on Plaintiff's fusion being intact and his treating surgeon's concurrence. (Doc. 13 at 9–10.) But again, this argument presumes that a non-intact fusion would significantly limit Plaintiff's ability to function, and the record does not support that presumption. Rather, as discussed above, the record reveals that, since his surgery, Plaintiff has had no significant neurological deficits; normal coordination, range of motion, and motor strength; and pain relief with non-

narcotic medication.  *See supra.*  Notably, there is no treating source opinion or treatment note stating that Plaintiff was significantly limited due to his incomplete fusion following surgery.  *See Diaz*, 59 F.3d at 315 ("[I]t was proper for the ALJ to rely on the absence of findings by any physician concerning plaintiff's alleged inability to sit for prolonged periods in deciding that she could resume her work as a sewing machine operator.").  To the contrary, Plaintiff's treating nurse, Sharon Morgan, recorded in July 2015—approximately seven months after the surgery—that Plaintiff continued to "recover well" from the surgery (AR 629), and "move[d] around the room with comfort and ease, with a steady gait and station, moving all four extremities without difficulty" (AR 628).  And Plaintiff's treating surgeon, Dr. Scott Lollis, stated in December 2015—approximately one year after the surgery and eight months after Dr. Gaughan opined that Plaintiff could gradually return to work, assuming his fusion was intact and his treating surgeon agreed—that Plaintiff was "functioning reasonably well" and his symptoms were "nonprogressive."  (AR 722.)  About a month later, in January 2016, treating pain management specialist Dr. Janice Gellis noted that Plaintiff was not interested in using opioids because he had "very good pain relief" with marijuana.  (AR 735.)

Dr. Gaughan's opinion that Plaintiff gradually would be able to return to work after his surgery is consistent with the record as a whole.  It is also consistent with the opinion of agency consultant Dr. Runge, discussed above, to which the ALJ afforded great weight.  Therefore, Plaintiff has shown no error in the ALJ's decision to afford great weight to Dr. Gaughan's opinion.

### C.     Examining WC Consultant Dr. Davignon

Plaintiff also argues that the ALJ erred in his analysis of the opinions of another examining medical consultant for Plaintiff's WC case, Dr. Philip Davignon. (Doc. 13 at 10–11.)  In October 2015, Dr. Davignon conducted an Independent Medical Evaluation of Plaintiff, finding among other things that Plaintiff had "diminished [sensation] to pinprick" in all digits and from the knees to the feet on both sides; reduced range of motion in the shoulders and cervical spine; 5/5 motor strength in the upper and lower extremities and all muscle groups; active range of motion of both elbows, wrists, and digits; and symmetric reflexes and arm/forearm circumferences. (AR 864–65.)  Noting that Plaintiff did not seem to have improved since his December 2014 surgery but did not require additional surgery, and referring to tables and charts used in WC cases, Dr. Davignon opined that Plaintiff had a 28% "whole person impairment."  (AR 865.)  Approximately two months later, after reviewing additional medical records including a cervical spine radiology report showing Plaintiff's incomplete fusion following surgery, Dr. Davignon stated in a follow-up letter to Plaintiff's counsel that Plaintiff did "not appear to be symptomatic" at a July 2015 follow-up appointment with Nurse Morgan and opined that Plaintiff had a "sedentary work capacity."  (AR 867.)  The ALJ gave "some weight" to these opinions, noting that "the doctor did not assess [Plaintiff's] RFC."  (AR 26.)

Plaintiff claims the ALJ erred in his analysis of these opinions principally because his description of Dr. Davignon's report and follow-up letter was "false" and "not accurate."  (Doc. 13 at 10.)  It is true that, in describing Dr. Davignon's report and

subsequent letter, the ALJ noted only certain findings contained therein, leaving out some findings. But the ALJ was required neither to describe nor to accept every finding contained in the report and letter, especially considering that Dr. Davignon was not a treating physician but rather an examining consultant providing a report for the purpose of Plaintiff's WC case. *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to [his or her] decision, so long as the record permits [the court] to glean the rationale of [the] decision" (internal quotation marks omitted)); *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations."); 20 C.F.R. § 404.1527(c)(1)[5] ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). Moreover, contrary to Plaintiff's contention, the ALJ's statements that (1) Dr. Davignon's report revealed "normal functioning except for some pinprick sensation deficits in all digits," and (2) Dr. Davignon's letter stated Plaintiff "did not appear to be symptomatic and . . . would eventually be able to return to work" (AR 26), are mainly correct (*see* AR 864–65, 867). The ALJ's failure to discuss the few other abnormal findings contained in Dr. Davignon's report amounts to harmless error at most. *See Berry v. Schweiker*, 675 F.2d 464, 466 (2d Cir. 1982) ("Although the reasoning of the [Commissioner] with respect to one issue might have been more

---

[5] 20 C.F.R. § 404.1527 has been revised effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). But, as noted earlier regarding the treating physician rule, because Plaintiff's DIB application was filed before that date, the revised regulations do not apply here.

clearly articulated, we find that his decision was supported by substantial evidence and we accordingly affirm."); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary . . . [w]here application of the correct legal standard could lead to only one conclusion." (second alteration in original) (internal quotation marks omitted)).

The ALJ's description of Dr. Davignon's report and opinions, taken as a whole, are largely accurate. Most significantly, the ALJ correctly stated that Dr. Davignon found that Plaintiff had a 28% whole person impairment and would eventually be able to return to work. (AR 26; *see* AR 865, 867.) These findings support the ALJ's decision that Plaintiff was not disabled during the relevant period. The ALJ's ultimate RFC determination—that Plaintiff could do medium work with some restrictions—differs from Dr. Davignon's opinion that Plaintiff could do only sedentary work; but the ALJ was entitled, indeed required, to consider the whole record, not just the opinion of one examining consultant, in making his RFC determination. *See Trepanier v. Comm'r of Soc. Sec.*, No. 17-3684-cv, 2018 WL 5919906, at *4 (2d Cir. Nov. 13, 2018) ("Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, . . . the ALJ was entitled to weigh all of the evidence available to make a [RFC] finding that was consistent with the record as a whole." (citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)); *see also* 20 C.F.R. § 404.1545(a)(1) (ALJ must assess claimant's RFC "based on all the relevant evidence in [the] case record").

Appropriately giving great weight to the medical opinions of Dr. Runge and Dr. Gaughan, and considering the entire record as a whole, including in particular treatment notes from Plaintiff's medical providers and Plaintiff's robust activities, the ALJ determined that Plaintiff had a medium work RFC (with some restrictions). As discussed above, the ALJ committed no legal error in his evaluation of the medical opinions, and his RFC determination is supported by substantial evidence. These grounds are thus not a basis for remand. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the determination, it must be upheld."); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (holding that, although "reasonable minds [might] disagree as to whether [the claimant] is disabled," if the ALJ considered the relevant factors and "simply reached a conclusion, supported by substantial evidence, with which [the claimant] does not agree," there is no cause to remand); *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (limiting court's review to "determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard" (internal quotation marks omitted)).

III.    **ALJ's Determination that Plaintiff Could Return to His Past Relevant Work as a Sandblaster**

Finally, Plaintiff contends the ALJ erred in determining at step four of the sequential analysis that Plaintiff could return to his past relevant work as a sandblaster. (Doc. 13 at 12–15.) This contention relies on Plaintiff's claims that the ALJ "fail[ed] to properly assess the [medical] opinion evidence and objective medical evidence," and "wrongly concluded that the Plaintiff had the RFC for 'medium' work."

(*Id.* at 13.)  Because, as explained above, the Court has found the opposite on both claims, i.e., that the ALJ did not err in his analysis of the medical opinions and that the ALJ's RFC determination is supported by substantial evidence, the argument fails.

## Conclusion

For these reasons, the Court DENIES Plaintiff's motion (Doc. 13), GRANTS the Commissioner's motion (Doc. 17), and AFFIRMS the decision of the Commissioner. The Clerk shall enter judgment on behalf of the Commissioner.

Dated at Burlington, in the District of Vermont, this 12th day of March 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge